IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 6:08-CR 00034 |
| ) | |
| ) | |
| DAVID EISENLOHR ) | |

DEFENDANT'S TRIAL MEMORANDUM

David Eisenlohr stands charged in a three-count second superceding indictment. Counts 1 and 2 allege respectively that on October 26, 2006 and September 25, 2006 he shipped in interstate commerce a visual depiction, the production of which involved the use of a minor engaging in sexually explicit conduct and which depicted such conduct in violation of 18 USC Section 2252(a)(1) and (2). Count 3 alleges that on November 9, 2006 Mr. Eisenlohr advertised for distribution visual depictions of minors engaging in sexually explicit conduct in violation of 18 USC Section 2251(d)(1)(A) and 2. He submits this trial memorandum in anticipation of his bench trial set for April 1, 2009.

**Factual Background**

On March 24, 2006, South Boston Virginia police officers arrested David Tetterton after he had visited a Walmart and developed and printed items appearing to be child pornography. In a subsequent search of Tetterton's home officers found, among other items, brochures and sales receipts from Insider's Video Club (IVC). As the parties have stipulated, David Eisenlohr is the owner and operator of IVC, a company based in Hollywood, California that markets and

distributes videos and photograph sets.

IVC does not distribute adult pornography or x-rated films. Its inventory and offerings include foreign films and television series as well as "naturist" films. These "naturist" films are the focus of this prosecution. Essentially, they depict people in the nude going about their daily (nonsexual) activities. One film, for example, is entitled "Oskar and His Moped." It lasts 30 minutes or so and shows a boy tinkering with his motorcycle, sitting on it, riding it, and standing by it. The boy is nude except for a pair of tennis shoes and socks. He engages in no sexual acts—he simply rides and works on his motorcycle. Other films of this genre include "Sunny Boys" (boys on vacation in Ukraine, includes scene of two boys in a sauna), "Sun, Water and a Dog" ( three boys at a beach), and "Let's Go Camping" ( two boys camping on a beach).

United States Postal Service Agents acquired these films and other items from IVC by following up on the investigation of Tetterton. Agent Mary Aldridge, posing as a customer, ordered films from IVC and later sought and obtained warrants to search IVC's office in Hollywood.[1] The court will view some of the seized films and photosets, will see the advertising IVC developed for the films and be asked to determine whether the seized items are child pornography and if so whether Mr. Eisenlohr is criminally liable for distribution and advertising of child pornography.

## Discussion of the Statutes

### "Lascivious Exhibition"

Each of the statutes Mr. Eisenlohr is alleged to have violated has in common the element that the visual depiction distributed or advertised was of a "minor engaging in sexually explicit

---

[1] IVC no longer is in business. The government has all of its computers, much of its inventory, and nearly all of its

conduct." The statute (18 USC Section 2256) lists five categories of such conduct: 1. "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal;" 2. bestiality; 3. masturbation; 4. sadistic or masochistic abuse; and 5. "lascivious exhibition of the genitals or pubic area of any person."

In this case, as noted, none of the videos or images shows sexual activity. The case, therefore, centers on the phrase "lascivious exhibition of the genitals or pubic area"— a phrase whose meaning has been appropriately described as "less than crystal clear" but which has withstood challenges that it is unconstitutionally vague. United States v. Wolf, 890 F. 2d 241, 243 (10th Cir. 1989); see also United States v. X-Citement Video, 513 U.S. 64 (1994)(use of term lascivious to define prohibited material is constitutional on its face). A sampling of the cases construing the term provides guidance for making this fact-bound determination.[2]

The leading case is United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986) aff'd sub. nom. United States v. Wiegand, 812 F. 2d 1239 (9th Cir. 1987). Its guidance for construing the term "lascivious exhibition" has been adopted by several circuits and is included in the pattern jury instructions in several circuits. See United States v. Amirault, 173 f. 3d 28 (1st Cir. 1999); United States v. Knox, 32 F. 3d 733 (3rd Cir. 1994); United States v. Rubio, 834 F. 2d 442 (5th Cir. 1987); United States v. Campbell, 81 Fed. Appx. 532 (6th Cir. 2003); United States v. Moore, 215 F. 3d 681 (7th Cir. 2000); United States v. Horn, 187 F. 3d 781 (8th Cir. 1999); Wolf, supra..[3]

---

business records. Mr. Eisenlohr, age 76, does not intend to restart his business.

[2] "Lascivious" is defined as tending to excite lust; lewd; indecent; obscene; sexual impurity; tending to deprave the morals in respect to sexual relations; licentious." Black's Law Dictionary, 882 (6th ed. 1990).

[3] It does not appear that the Fourth Circuit has decided one way or the other whether the Dost factors should be considered in the same way as in these other Circuits. At least one district court has found them helpful in making the lasciviousness determination. United States v. Whorley, 400 F. Supp. 2d 880 (E.D. Va. 2005)(ruling that expert testimony on whether images were a lascivious exhibition was not admissible as this was a commonsense determination informed by consideration of the Dost factors). In United States v. Nemuras, 740 F. 2d 286 (4th Cir. 1984), the court affirmed a child pornography conviction of a man who photographed a 4-year old child in various

In Dost, the defendants took photographs of a 14-year old girl and a 10-year old girl. The girls were nude and posed in "unnatural positions." None depicted sexual acts, however, so the court focused entirely on whether the photographs depicted a "lascivious exhibition of the genitals." The court suggested that in making this determination, triers of fact should consider the following factors:

   1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

   2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

   3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

   4) whether the child is fully or partially clothed, or nude;

   5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

   6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Dost, 768 F. Supp. at 832.

Applying these factors, the court determined that the photographs were a prohibited exhibition of the genitals. The court noted that the photographs showed the nude children in various posed unnatural positions—"pelvic area slightly raised or hyper extended," legs "spread apart," pubic area the "prominent focal point of the photograph." Id. at 833. All in all, the court concluded that the poses were "sexual poses" suggesting a "willingness to

---

nude and semi-nude poses and sold the photos. With little discussion, the court determined that the photos were a "lewd exhibition of the genitals or pubic area" of the child.

engage in sexual activity." Id.

As noted, several other courts have adopted the Dost factors as at least being useful in making the determination whether an image is a lascivious exhibition of the genitals within the meaning of the federal statute. In United States v. Villard, 885 F. 2d 117 (3rd Cir. 1989), the court described the factors as "provid[ing] specific, sensible meaning to the term lascivious" and noted that "[a]lthough more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present." Id. at 122. Under consideration in Villard were photographs from a magazine entitled "Beach Boys No. 2." The photographs, purchased in a "gay bookstore," showed a 14 to 15-year old boy, fully nude, "semi-erect," and appearing to be sleeping. Id. at 119. In reversing the jury's finding that the photographs were a lascivious exhibition of a minor's genitals in violation of the federal statute, the court noted that the boy was not in an unnatural pose, that there were no facial expressions or gestures suggesting a willingness to engage in sexual activity, and that while the photographs could elicit a sexual response in viewers they did not appear to be designed to elicit such a response.

The court's discussion of this final point bears emphasis as we anticipate that it will be particularly important in this case. The court reasoned:

> Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer. We agree with the view expressed by the district court in this case:

> Child pornography is not created when the pedophile derives sexual enjoyment from an otherwise innocent photo. As the Ninth Circuit stated, "Private fantasies are not within the statute's ambit." United States v. Weigand, 812 F.2d at 1245. When a picture does not constitute child pornography, even though it portrays nudity, it does not become child pornography because it is placed in the hands of a pedophile, or in a forum where pedophiles might enjoy it. *Faloona v. Hustler Magazine, Inc.*, 607 F. Supp. 1341 (N.D.Tex. 1985) (nude pictures of children did not constitute child pornography when published in "legitimate" *Sex Atlas* or in "raunchy" *Hustler* magazine, because they did not depict children engaged in sexual conduct).

5

> We must, therefore, look at the photograph, rather than the viewer. If we were to conclude that the photographs were lascivious merely because Villard found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand -- a legal analysis of the sufficiency of the evidence of lasciviousness.

Villard, 885 F. 2d at 125.

Villard is not old law.  More recently, in Doe v. Chamberlain, 139 F. Supp. 2d 637 (M.D. Pa. 2001) affirmed 299 F. 3d 192 (3rd Cir. 2002), the court undertook a thoughtful examination of whether images constituted a lascivious exhibition of a minor's genitals or pubic area in the context of a civil suit by parents upset with a photographer who photographed their children without the parents' consent.  Among the photographs under consideration were photographs of nude children taking a shower at the beach.  The court described the photographs as follows:

> There are no close-ups among the photos, and the focal point of many of the shots appears to be the stream of water falling into the midst of the girls from a shower head affixed to the side of a house or similar structure. The four minor girls are huddled in a circle facing the water streaming through the center of the group. In some of the photographs, one or more of the girls has her face turned upward to catch the falling water. If the stream of water is not the focal point of a particular photograph, there likely is no focal point, unless, perhaps, it is the face of a minor who is looking into the camera.  In any event, there is nothing about any of the beach photos that would tend to draw the eye to the pubic area of any of the minors.

Id. at 633-634. The court held that the photographs were not a lascivious exhibition within the meaning of the federal statute noting that there was no hint of sexual coyness, that nudity alone is not sufficient to establish lasciviousness, that there were no close-ups of the pubic area, and that while a jury might find "some association" with a shower and a sexual act this would be "minimal" support for a finding of lasciviousness.  Id. at 643.

In affirming the lower court, the Third Circuit agreed that "no reasonable juror could

find the beach photos lascivious—that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." Doe v. Chamberlain, 299 F. 3d at 196. Addressing another set of photographs, studio shots of girls in transparent clothing, the court likewise affirmed the district court's finding that the photos were not lascivious. In the words of the district court, "[t]ransparent clothing without more, is simply not enough to justify a finding of lasciviousness." Doe, 139 F. Supp. 2d at 646.

The teaching of the above cases and others[4] addressing whether images are a lascivious exhibition in violation of the federal statute is two-fold. First, nudity alone is not sufficient to qualify as a lascivious exhibition. Second, the inquiry focuses on the images, the photographs, the videos themselves and not on the possible reactions of viewers. An image is not a lascivious exhibition because one can imagine that a pedophile would be sexually aroused by the image. The inquiry focuses on the image and the Dost factors are a useful tool in answering the question whether the image is one intended to elicit a sexual response from the viewer.

**Scienter**

Each of the charges against Mr. Eisenlohr alleges that he "knowingly" either shipped child pornography in violation of 18 USC Section 2252 (Counts 1 and 2) or advertised child pornography in violation of 18 USC Section 2251 (Count 3). In United States v. X-Citement Video, 513 U.S. 64 (1994), the Court held that in the context of 18 USC

---

[4] See e.g., United States v. Helton, 2008 U.S. App. LEXIS 25201 (10th Cir. 2008)(applying Dost factors in affirming conviction of man who secretly videotaped girl using the bathroom); United States v. Miller, 2006 U.S. Dist. LEXIS 72096 (M.D. Pa. 2006)(applying Dost in finding that photograph of naked girl pulling her underpants down around her upper thighs was lascivious exhibition as it was sexually suggestive and unnatural); United States v. Rivera, 2006 U.S. Dist. LEXIS 65971 (D. Conn. 2006)( applying Dost in finding that photographs of boy in sexually suggestive poses (legs spread, in anal sex position) were lascivious exhibition).

Section 2252 the term "knowingly" applies broadly to both the actions prohibited by the statute (possessing, receiving, or shipping) and to "the sexually explicit nature of the material as well as to the age of the performers." Id. at 78; see also United States v. Acheson, 195 F. 3d 645, 653 (11th Cir. 1999).(government must show that individual not only received or distributed the material, but that he did so believing that the material was sexually explicit in nature and that it depicted a person who appeared to him to be, or that he anticipated would be under 18 years of age.)

Thus, pattern jury instructions (attached as exhibit 1) for 18 USC Section 2252(a)(1) offenses (Counts 1 and 2) require the government to prove:

1. That the defendant knowingly mailed or shipped a visual depiction in interstate commerce;
2. That the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;
3. That such visual depiction is of a minor engaged in sexually explicit conduct; and
4. That the defendant knew that at least one of the performers in such visual depiction was of such minor engaged in sexually explicit conduct.

Eleventh Circuit Pattern Jury Instructions, No. 75.1, Thomson West 2003; see also Modern Federal Jury Instructions-Criminal, Section 62.02, Matthew and Bender 2008.

The reasoning and holding of X-Citement Video, should apply with equal force to the advertising charge under 18 USC Section 2251(d)(1). The statute, as noted, uses "knowingly" in the same way as does Section 2252 and includes the same requirements that the subject matter (in this instance advertising) be of a minor engaged in sexually

explicit conduct. Accordingly, defendant submits that as to the advertising count the government must prove:

1. That he knowingly printed or published or caused to be printed or published a notice and advertisement to distribute and reproduce a visual depiction;

2. That the visual depiction was of a minor engaging in sexually explicit conduct; and

3. That he knew that at least one of the performers in such visual depiction was of such minor engaged in sexually explicit conduct.

**Conclusion**

David Eisenlohr submits this memorandum to assist the court in trying this case and anticipates moving for acquittal at the appropriate time as the materials at issue are not child pornography and he did not knowingly distribute such.


Respectfully Submitted,


DAVID EISENLOHR
By Counsel

s/Randy V. Cargill
Assistant Federal Public Defender
Office of the Federal Public Defender
    for the Western District of Virginia
210 1st Street, Suite 400
Roanoke, VA 24011
(540) 777-0880


CERTIFICATE OF SERVICE

     I hereby certify that a true copy of the foregoing document was electronically filed with the Clerk of Court and will be forwarded using the CM/ECF system to Assistant United States Attorney Jeb Terrien counsel for the United States this 23rd day of March, 2009.

                                              s/Randy Cargill